1
Margaret A. McLetchie
Nevada Bar No. 10931

2
MCLETCHIE SHELL, LLC

3
701 E. Bridger Ave., Ste 520
Las Vegas, Nevada 89101

4
(702)728-5300

5
Philip J. Kohn

6
CLARK COUNTY PUBLIC DEFENDER
Nevada Bar No. 0556

7
Christy Craig
Nevada Bar No. 6262

8
309 S. Third Street, Suite #226

9
Las Vegas, Nevada 89155
(702) 455-4685

10
*Attorneys for Plaintiffs*

11
Adam Laxalt

12
ATTORNEY GENERAL
Julie A. Slabaugh

13
Senior Deputy Attorney General
Nevada Bar No. 5783

14
100 N. Carson St.

15
Carson City, Nevada 89701
*Attorneys for Defendants*

16

17
**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

18

19
ERIC BURNSIDE, an individual,               )
JAUMAL PUGH, an individual, NICHOLAS        ) Case No. 2:13-cv-01102-MMD-GWF

20
DURAN, an individual,                       )
                    Plaintiffs,              )

21
                                            )
            v.                               ) **REVISED PROPOSED MODIFIED**

22
                                            ) **CONSENT DECREE, ORDER, AND**
RICHARD WHITLEY, in his official capacity    ) **JUDGMENT**

23
as acting Administrator of the Nevada Division )
of Mental Health and Developmental Services, )

24
*et al.*                                     )
                    Defendants.              )

25
_____ )

26

27
        Defendants, Richard Whitley, Dr. Elizabeth Neighbors and Michael Willden

28

1

1    (hereinafter Defendants) in their official capacities,[1] by and through counsel, Adam Paul

2    Laxalt, Attorney General of the State of Nevada, and Julie A. Slabaugh, Senior Deputy

3    Attorney General, and Plaintiffs, by and through counsel, Margaret A. McLetchie, of

4    McLetchie Shell, LLC, and Philip J. Kohn, Clark County Public Defender, and Christy Craig,

5    Chief Deputy Public Defender, jointly hereby respectfully submit the attached revised

6    proposed modified Consent Decree, Order, and Judgment and Plan for review and approval by

7    this Court. Further information detailing the bases for the proposed modifications detailed

8    herein are detailed in the Parties' Joint Status Report filed on November 30, 2015 (**Doc. # 39**).

9

10   ADAM PAUL LAXALT                          MCLETCHIE SHELL LLC
     Attorney General
11

12   Date: December 21, 2015                   Date: December 21, 2015

13

14   /s/ Julie A. Slabaugh                     /s/ Margaret A. McLetchie
     Julie A. Slabaugh                         Margaret A. McLetchie
15   Senior Deputy Attorney General            701 East Bridger Avenue, Suite 520
     100 North Carson Street                   Las Vegas, Nevada 89101
16   Carson City, Nevada 89701                 (702) 728-5300
     (775) 684-1131
17   Attorneys for Defendants

18                                             PHILIP J. KOHN
                                               Clark County Public Defender
19

20                                             Date: December 21, 2015

21

22                                             /s/ Christy Craig
                                               Christy Craig, Chief Deputy
23                                             Public Defender
                                               309 South Third Street, Suite 226
24                                             Las Vegas, Nevada 89155
                                               (702) 455-4685
25                                             Attorneys for Plaintiffs

26

27   [1] Since the filing of this action Richard Whitley has been appointed the Director of the Nevada
     Department of Health and Human Services and Cody Phinney has been appointed the
28   Administrator of the Division of Public and Behavioral Health, formerly the Division of Mental
     Health and Developmental Services.

1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4   ERIC BURNSIDE, an individual,                      )
5   JAUMAL PUGH, an individual, NICHOLAS    ) Case No. 2:13-cv-01102-MMD-GWF
    DURAN, an individual,                             )
6                                                      )
                                                       )
7              Plaintiffs,                             )
                                                       ) **MODIFIED**
8          v.                                          ) **CONSENT DECREE,**
                                                       ) **ORDER, AND JUDGMENT**
9   RICHARD WHITLEY, in his official capacity          )
    as acting Administrator of the Nevada Division     )
10  of Mental Health and Developmental Services,       )
    *et al.*                                           )
11             Defendants.                             )
12  ———————————————————————————— )

13          The Court has reviewed and considered the Modified Consent Decree, Order, and

14  Judgment entered into by the parties and is of the opinion that it is a fair and reasonable

15  resolution of the issues pending between them. Based thereon, the Court hereby approves the

16  proposed Modified Consent Decree (and attached Plan) and hereby approves the proposed

17  Consent Decree and directs the entry of the Order and Judgment as follows:

18  **BACKGROUND**

19          1.      The Modified Consent Decree resolves disputes pertaining to the above-

20  captioned civil action for injunctive and declaratory relief pursuant to 42 U.S.C. § 1983

21  brought by Plaintiffs Eric Burnside, Jaumal Pugh, and Nicolas Duran (collectively,

22  "Plaintiffs") against Richard Whitley, in his official capacity as Administrator of the Nevada

23  Division of Public and Behavioral Health (DPBH); Dr. Elizabeth Neighbors, in her official

24  capacity as Director Of Lake's Crossing Center for the Mentally Disordered Offender; and

25  Michael J. Willden, in his official capacity as Director of the Nevada Department of Health

26  and Human Services (collectively, "Defendants").

27          2.      Plaintiffs are all pretrial detainees who have been or will be committed to the

28

3

1  custody of the DPBH pursuant to Nev. Rev. Stat. 178.425 ("Incompetent Detainees")[2].

2      3.      Section 178.425(1) of the Nev. Rev. Stat. requires that, upon entry of an order

3  from the Eighth Judicial District Court of Nevada finding a criminal defendant incompetent,

4  the judge shall order the Sheriff to convey the defendant (incompetent detainee) forthwith to

5  the custody of the Administrator of the Division of Public and Behavioral Health of the

6  Department of Health and Human Services of the State of Nevada (the "Division") to receive

7  Prompt Restorative Treatment, as defined below. Formerly, Lakes Crossing Center for the

8  Mentally Disordered Offender (LCC), located in northern Nevada, was the only facility in

9  Nevada operated by the Division for the purpose of treating incompetent detainees such as

10  Plaintiffs. Defendants have begun providing treatment to incompetent detainees in Southern

11  Nevada.

12      4.      Plaintiffs alleged that Defendants failed to provide court-ordered treatment to

13  incompetent detainees in violation of Plaintiffs' substantive and procedural due process rights

14  guaranteed by the Fourteenth Amendment to the United States Constitution.

15      5.      The Ninth Circuit has held that incompetent detainees must be transferred to an

16  appropriate mental health treatment facility within seven (7) days of the court's finding of their

17  incapacity to stand trial. *Oregon Advocacy Center v. Mink*, 322 F. 3d 1101, 1123 (9th Cir.

18  2003).

19      6.      Similar issues as those raised in this litigation were previously litigated in

20  *Nevada Disability Advocacy and Law Center, Inc v. Carlos Brandenburg*, U.S. District Court

21  of Nevada Case No. CV-S-05-0782-RCJ (RJJ) ("NDALC Case"). In an April 2008 Settlement

22  Agreement and Release of Claims ("Agreement") entered into in the NDALC Case, the

23  directors of DHHS, MHDS and Lakes Crossing agreed that all incapacitated criminal

24  defendants must be provided "Prompt Restorative Treatment" at an MHDS facility. The

25  Agreement defined "Prompt Restorative Treatment" as providing appropriate treatment to

26  competency within seven (7) days from MHDS's receipt of a court order. In the Agreement,

27  DHHS and MHDS agreed to a minimum of three (3) years of monthly status reports regarding

28  _____

[2] *See* Definitions.

4

the Prompt Restorative Treatment of all Incapacitated Defendants. The required reporting and oversight ended in 2011.

7.     In the instant litigation, Plaintiffs have alleged that, less than two (2) years after the "required reporting and oversight" ended, Defendants have returned to the 2005 practice of denying incompetent criminal defendants the required Prompt Restorative Treatment, thereby violating the substantive and procedural due process rights of said defendants. Plaintiffs have also alleged that Defendants are unable to promptly accept incompetent detainees for Prompt Restorative Treatment by Lakes Crossing that incompetent detainees have routinely spent weeks and, in most cases, months, at detention facilities where the conditions are punitive and no Prompt Restorative Treatment is available.

8.     Plaintiffs and Defendants (collectively, "the parties") agreed that it is in the parties' best interests, and in the public interest, to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the parties agreed to the entry of the Consent Decree without trial or further adjudication of any issues of fact or law raised in the Complaint; the Consent Decree was previously entered in this matter on January 29, 2014 (**Doc. # 25**).

9.     Subsequently, Plaintiffs filed a motion for an order to show cause as to why Defendants should not be held in contempt for failing to comply with the consent decree (**Doc. # 29**).

10.     Based on the pleadings, this Court made a finding that Defendants violated the consent decree (**Doc. # 36**), but held a hearing on October 28, 2015 to address the appropriate remedies for Defendants' failure to comply with the Consent Decree. After that hearing, the Court directed counsel to meet and confer to propose a plan for compliance with the Consent Decree, which the Court noted may include using an independent monitor to oversee compliance. (**Doc. # 38**).

11.     As detailed in the parties' November 30, 2015 status report, the parties subsequently met and conferred extensively. While Plaintiffs are disappointed with Defendants' failures to comply, they have worked with Defendants to develop a plan of action they hope will bring Defendants into conformity with the law, particularly in light of the

1  addition of recent beds to accommodate incompetent detainees in Clark County. The parties

2  submitted a Proposed Modified Consent Decree, Order, and Judgment (**Doc. # 40**, "initial

3  proposed modified consent decree") noting that the instant litigation pertains to Clark County

4  and setting forth a plan under which Defendants would provide Prompt Restorative Treatment,

5  as defined below, to incompetent detainees in Clark County by March 6, 2016 and statewide by

6  June 1, 2016.[3]

7       12.     The Court held a hearing on that initial proposed modified consent decree

8  Order, and Judgment on Tuesday, December 15, 2015, wherein the Court posed questions to

9  Counsel. The Court: (1) directed counsel to provide date reflecting the amount of time Clark

10 County detainees experience and how much time detainees from the rest of the state

11 experience; (2) asked counsel for Defendants to determine what additional hardship might

12 accrue to the State if the Court were to require the State of Nevada to meet the time lines for all

13 state detainees statewide by April 1, 2016 rather than June 1, 2016, and (3) directed counsel to

14 submit any revised proposed consent decree by 5 p.m. on Monday, December 21, 2015.

15      13.     This Revised Proposed Modified Consent Decree follows.[4]

16 **THIS CONSENT DECREE IS IN THE PUBLIC INTEREST**

17      14.     This Consent Decree is in the public interest because it establishes a clear plan

18 for providing Prompt Restorative Treatment to Incompetent Detainees in Clark County and

19 statewide while attempting to balance the safety concerns of the detainees, the staff and the

20 community.

21

22      *Clark County*

23      15.     Defendants have already opened beds at Stein Hospital, as well as beds at the

24 "C-Pod" unit of Rawson Neal. These beds accommodate the historical and current long waiting

25 list of Incompetent Detainees awaiting Prompt Restorative Treatment ("Waiting List," as

26

27 [3] It also detailed a schedule for reducing the Waiting List that Defendants represented they
would follow.

28 [4] Due to the holiday schedule, this document is executed by counsel. A consent reflecting
Defendants' approval will be filed after court approval.

defined below) in Clark County and provide needed beds in Clark County. While some Incompetent Detainees from Clark County will still need to be transported to Lakes Crossing due to security issues (Lakes Crossing is a more secure environment than either Stein or the C-Pod), having beds available in Clark County, where the majority of the State's population lives, for the first time has already reduced the Waiting List in Clark County due to the logistical problems it solves. Further, as discussed below, the increase in beds in Clark County also benefits Incompetent Detainees in the rest of the state.

16.     Further, if the Waiting List is not in fact reduced according to that schedule, specific enforcement mechanisms are set forth herein and Plaintiffs will require that Defendants institute specific measures, including appointment of a monitor, if Defendants do not follow the schedule they developed.

***Statewide Benefits***

17.     The Consent Decree also sets forth a plan for compliance statewide and has statewide benefits.

18.     While they are concerned with violations in other parts of the State, Plaintiffs have asserted and continue to assert that this case is limited to Clark County because it was brought on behalf of Incompetent Detainees improperly held at the Clark County Detention Center to address the Waiting List of Incompetent Detainees awaiting transfers to therapeutic facilities for treatment. Defendants, in contrast, assert that the prior Consent Decree was not, by its terms, limited to Clark County, and are hereby consenting to a plan of action that brings relief statewide to incompetent detainees awaiting treatment.

19.     However, nothing in this Consent Decree should be interpreted as limiting the rights of Incompetent Detainees in other parts of the State because their interests are not represented in this litigation.

20.     The focus of recent efforts have been to address the fact that Clark County had no facility to treat Incompetent Detainees. As a result of the fact that previously all Clark County Incompetent Detainees has to be transported to Northern Nevada, the Waiting List of Incompetent Detainees in Clark County has also historically been the most acute problem. For

example, in 2014 the commitments to Lake's Crossing Center were broken down as follows: 181 from Clark County, 52 from Washoe County and 21 from the other rural counties. In the first six months of 2015 the commitments were: 105 from Clark County, 24 from Washoe County and 7 from the other rural counties. (Doc # 30, Exhibits 1 & 2 and Doc. # 31-1, Exhibit A, pp. 15-19.). This data also reflects that the number of commitments in Clark County were growing at a faster rate than the rest of the state. Further, by virtue of geography, there were additional delays in admissions from Clark County due to the need to transport the detainees across the entire state in an airplane that detainees in Washoe County were not subject to. For example, two airplanes from Clark County had to be canceled in December due to poor weather in Washoe County.

21.     The commitments to Lake's Crossing Center from the Rural Counties in Nevada do not all pertain to Incompetent Detainees; the majority of the orders from Rural Counties are for the initial evaluations under NRS 178.415 and are not commitment orders pursuant to NRS 178.425. This is a function of the fact that most of the rural counties in Nevada do not have the professional clinicians in the county who can do the pre-commitment evaluations pursuant to NRS 178.415.

22.     The measures contemplated in this Consent Decree are in the public interest and and bring statewide relief. While the additional beds have been and will be added in Clark County, the increase in numbers will have benefits statewide because they will reduce the demand on beds at Lakes Crossing, freeing up beds to serve Incompetent Detainees from Washoe County and the rural counties of Nevada. As the thirty-four additional beds at the Stein hospital are opened and the current Clark County Waiting List clears, and as more Clark County residents leave Lake's Crossing Center more beds will be available for detainees from Washoe County and the Rural Counties. Detainees from Washoe County and the Rural Counties will continue to be admitted to Lake's Crossing Center while the Clark County Waiting List is being cleared just not as in a large of a number as is anticipated once the demand from Clark County has been further reduced. Further, the Defendants and the Washoe County Detention Center along with its medical provider, have developed protocols to provide

1   some limited interventions in the jail while the individuals are waiting for a bed at Lake's
2   Crossing Center. (Doc. 31, pgs. 5-6).

3       Accordingly, the parties hereby AGREE and the Court expressly APPROVES,
4   ENTERS AND ORDERS THE FOLLOWING:

5   **JURISDICTION AND VENUE**

6

7       1.    This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1331 and
8   1343. The parties agree that venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2). Plaintiffs
9   assert that this case is limited to Clark County because it was brought on behalf of incompetent
10  detainees improperly held at the Clark County Detention Center to address the Waiting List of
11  incompetent detainees awaiting transfers to therapeutic facilities for treatment.[5] Defendants
12  assert that the prior Consent Decree was not, by its terms, limited to Clark County and are
13  hereby consenting to a plan of action that brings relief statewide to incompetent detainees
14  awaiting treatment.

15  **DEFINITIONS**

16      2.    "Incompetent Detainee" is defined for the purposes of this Modified Consent
17  Decree as a person in Clark County that is committed to the custody of the Division of Public
18  and Behavioral Health pursuant to Nev. Rev. Stat. 178.425.

19      3.    "Treatment to Competency" is defined for the purposes of this Modified
20  Consent Decree as treatment provided to an Incapacitated Detainee to attempt to cause him to
21  attain competency to stand trial or receive pronouncement of judgment.

22      4.    "Prompt Restorative Treatment" is defined for the purposes of this Modified
23  Consent Decree as providing appropriate treatment to competency within seven (7) days from
24  the Division of Public and Behavioral Health's receipt of a court order.

25      5.    "Waiting List" is defined for the purposes of this Modified Consent Decree as
26  the Incompetent Detainees waiting for Prompt Restorative Treatment for more than seven (7)
27  days from the Division of Public and Behavioral Health's receipt of a court order.

28

---

[5] The Waiting List in Clark County has also historically been the most acute problem.

6.     "Effective Date" is defined for the purposes of this Modified Consent Decree as the date of Court approval.

**INJUNCTIVE RELIEF**

***General***

7.     Defendant shall designate a representative to have the authority to implement the requirements of this Consent Decree and the Plan and to provide written reports as set forth below ("Designee").

8.     All information provided pursuant to the above reporting requirements under this Decree should be provided to Plaintiffs via email and U.S. Mail to their counsel.

9.     Defendants shall take all necessary steps to provide Prompt Restorative Treatment to Incapacitated Detainees in Nevada as soon as possible. Defendants acknowledge that they are legally required to provide Prompt Restorative Treatment, regardless of the fact that the number of incompetent detainees may vary over time and regardless of funding, staffing, and logistical challenges. However, Defendants are not responsible for delays in admission to restorative treatment if they are able to accept admissions but delays outside Defendants' control do not allow prompt admission. For example, if Defendants are available to accept admissions but there is a delay in admission beyond the Defendant's control (including but not limited to transportation time frames, medical clearance and failures of self-surrendering detainees to surrender), those delays are not attributable to Defendants. This does not mean, however, that Defendants may rely on lack of funding or staffing, or any increase in the number of incompetent detainees in Clark County or statewide, as an excuse for noncompliance with this Modified Consent Decree. Further, in any proceeding to enforce the terms of this Modified Consent Decree, Defendants shall have the burden of showing that any delay in providing Prompt Restorative Treatment is legally not attributable to Defendants.

10.     Among the steps Defendants must take to provide Prompt Restorative Treatment is keeping the current beds available for incompetent detainees in Clark County available, including the 20 beds in the C-Pod unit of the Rawson Neal Hospital.

/ / /

*Current Waiting List Data*

11.     The current Waiting List data is attached as Exhibit 1. The numbers provided only reflect Incompetent Detainees who are committed to the custody of the Division of Public and Behavioral Health pursuant to NRS 178.425, not orders for evaluations pursuant to NRS 178.415. Those individuals have not been found incompetent and have not been committed to the Division of Public and Behavioral Health for restoration treatment.

*Schedule for Compliance*

12.     Defendants have analyzed historical data and developed a schedule on which they have represented to Plaintiffs they can achieve compliance in light of the opening of new beds in Southern Nevada.

13.     Defendants will place incompetent detainees into therapeutic environments and reduce the Waiting List according to the schedule set forth below:[6]

| | PROJECTED ADMISSIONS | | WAITING LIST | | NEW COMMITMENTS | |
|---|---|---|---|---|---|---|
| | Clark County | All Other | Clark County | All Other | Clark County | All Other |
| *December 18, 2015 Waiting List* | | | *24* | *24* | | |
| **Remainder of December of 2015: New Commitments and Admissions** | | | | | 6 | 4 |
| Lakes | 0 | 5 | | | | |
| Stein | 13 | | | | | |
| C-Pod | 0 | | | | | |
| *Total* | *13* | *5* | | | *6* | *4* |
| *Effect on Waiting List* | | | *-7* | *-1* | | |

(Continued on next page)

---

[6] These numbers reflect only Incompetent Detainees, not persons who are waiting for transfers to Lakes Crossing for other purposes, such as initial evaluations for competency. The data listed for "All Other" reflects the numbers for counties other than Clark.

| | PROJECTED ADMISSIONS | | WAITING LIST | | NEW COMMITMENTS | |
|---|---|---|---|---|---|---|
| | Clark County | All Other | Clark County | All Other | Clark County | All Other |
| **January 1, 2016 Expected Starting Waiting List** | | | **17** | **23** | | |
| **January of 2016: New Commitments and Admissions** | | | | | | |
| Lakes | 12 | 9 | | | | |
| Stein | 13 | | | | | |
| C-Pod | 5 | | | | | |
| *Total* | *30* | *9* | | | *16* | *8* |
| *Effect on Waiting List* | | | *-14* | *-1* | | |
| ***February 1, 2016 Resulting Waiting List*** | | | ***3*** | ***22*** | | |
| Lakes | 2 | 19 | | | | |
| Stein | 12 | | | | | |
| C-Pod | 5 | | | | | |
| *Total* | *19* | *19* | | | *16* | *8* |
| *Effect on Waiting List* | | | *-3* | *-11* | | |
| ***March 1, 2016 Resulting Waiting List*** | | | ***0*** | ***11*** | | |
| **March of 2016: New Commitments and Admissions** | | | | | 16 | 8 |
| Lakes | 2 | 19 | | | | |
| Stein | 13 | | | | | |
| C-Pod | 5 | | | | | |
| *Total* | *20* | *19* | | | *16* | *8* |
| *Effect on Waiting List* | | | | *-11* | | |
| ***April 1, 2016 Resulting Waiting List*** | | | ***0*** | ***0*** | | |

## *Data Tracking and Reporting*

14.   Throughout the term of this Consent Decree, Defendants shall track the following data (the "Data"):

- The starting Waiting List;

- New commitments;

- Admissions for each facility; and

12

- The resulting Waiting List.

This Data shall be broken down between Clark County and the rest of the state.

15. Defendants shall also collect and compile historical data reflecting the history of commitments and the Waiting List for incompetent detainees for 2008 – November, 2015, and shall provide it to Plaintiffs by January 1, 2016.

16. Defendants shall also provide Plaintiffs' counsel with a written report ("Report") that includes:

(a) The monthly Data for the preceding month;[7]

(b) A specific acknowledgment that Defendants have for the instant reporting period, complied with the requirements of the Decree; and

(c) A table detailing, for all orders received from the Eighth Judicial District during the prior reporting period, the date the order was received, the date a bed was available for the incapacitated detainee and the date the incapacitated detainee is admitted to restorative treatment.

Initially, Defendants shall provide Plaintiffs with a Report for the preceding month on the 10th of every month starting on January 11, 2016[8] and through March 10, 2016 (or the date Defendants have reached the goal of reducing the Waiting List of Clark County incompetent detainees awaiting transfers to therapeutic environments to zero, whichever comes first). Then, assuming Defendants continue to maintain the Waiting List at zero, Defendants shall provide a Report quarterly (including the three preceding months but showing the Data by month) for a period of five (5) years from the effective date of this Modified Consent Decree, due on the 10th day of the month four months after the last monthly report. Defendants shall resume providing a Report monthly if the Clark County Waiting List ever exceeds ten until they have again reduced the Waiting List to zero.

---

[7] The January 11, 2015 Report will also provide these required information for November of 2015 as well as December of 2015.

[8] If the 10th of the month falls on a weekend or State court holiday, the report will be provided on the following business day.

*Enforcement Mechanisms*

    *Additional Beds*

      17.    On February 1, 2016, if Defendants have not reduced the Clark County Waiting List to 3, then Defendants will open 20 additional beds to house incompetent detainees in Clark County no later than March 1, 2016.[9]

    *Monitor*

      18.    On March 1, 2016, if Defendants have not reduced the Clark County Waiting List to zero or, at any point thereafter, or if the Clark County Waiting List ever exceeds 10 per month for more than 10 days of two consecutive months ("triggering conditions"), Defendants agree that an independent monitor shall be put into place at Defendants' expense. Within three (3) business days of the date either of the triggering conditions arise, Defendants shall notify Plaintiffs. The parties shall subsequently meet and confer and submit a joint plan or separate plans for appointment of a monitor to the Court by April 1, 2016 (or 30 days after the date the Clark County Waiting List exceeds 10 for the second consecutive month).

      19.    In addition, at any time after March 1, 2016 that the Clark County Waiting List exceeds ten, Defendants will also notify Plaintiffs within three (3) business days, and the parties will work together to develop a mutually-agreeable plan for reaching compliance with Defendants' duty to provide Prompt Restorative Treatment within thirty (30) days or will seek court intervention if necessary, submitting separate plans.

    *Other*

      20.    Failure by Plaintiffs to enforce any provision of this Consent Decree shall not be construed as a waiver of their right to enforce other provisions of this Decree, nor as a waiver of their right to enforce that provision in the future

      21.    If any term of this Consent Decree is determined by any court to be unenforceable, the other terms of this Consent Decree shall nonetheless remain in full force and effect.

      22.    In addition to the provisions set forth above, Plaintiffs may review compliance

---

[9] This provision will not take effect if the failure to reduce the Waiting List to this level is not attributable to Defendants.

with this Consent Decree at any time. If Plaintiffs believe that this Consent Decree or any portion of it has been violated, Plaintiffs will raise their concerns with the Designee and the parties will attempt to resolve those concerns in good faith. Under such circumstances, Plaintiffs will give Defendants thirty (30) days from the date it notifies the Designee of any breach of this Consent Decree to cure that breach before filing a motion for contempt or taking any other enforcement action pursuant to this paragraph. Nothing in this paragraph limits Plaintiffs' rights to seek action as set forth above.

23.    Plaintiffs may seek additional attorneys' fees and costs for the purposes of enforcing this Modified Consent Decree, and filing a motion for contempt or taking any other enforcement action.

**OTHER RELIEF**

24.    Defendants shall compensate Plaintiffs for attorneys' fees and costs related to enforcement of the prior Consent Decree as follows: $36,151.23 to Margaret A. McLetchie of McLetchie Shell, LLC.

**GENERAL PROVISIONS**

25.    This Consent Decree shall be binding upon Defendants, the Nevada Division of Public and Behavioral Health, Lake's Crossing Center for the Mentally Disordered Offender, and the Nevada Department of Health and Human Services.

26.    This Consent Decree constitutes the entire agreement between the parties on the matters raised herein and no other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Consent Decree, including its attachments, shall be enforceable.

27.    This Consent Decree is not intended to remedy any other potential violations of the rights of pretrial detainees or any law that is not specifically addressed in this Consent Decree. Further, this Consent Decree does not constitute res judicata or collateral estoppel with respect to any individual not a party hereto who has or will be committed to the custody of the Division of Mental Health and Developmental Services pursuant to Nev. Rev. Stat. 178.425.

28.    The parties signing this Consent Decree in a representative capacity

15

acknowledge and warrant that they have the right to do so.

29.     The effective date of this Consent Decree is the date the Court enters the Decree.

30.     The duration of this Consent Decree will be five (5) years from the Effective Date.

### **ORDER**

IT IS SO ORDERED.

DATED this __22nd__ day of December, 2015.

_____

U.S. DISTRICT COURT JUDGE

16

1   **AGREED AND CONSENTED TO:**

2   ADAM PAUL LAXALT            MCLETCHIE SHELL LLC
  Attorney General

3

4   Date: <u>December 21, 2015</u>        Date: <u>December 21, 2015</u>

5

6   <u>*/s/ Julie A. Slabaugh*</u>          <u>*/s/ Margaret A. McLetchie*</u>
  Julie A. Slabaugh              Margaret A. McLetchie

7   Senior Deputy Attorney General    701 East Bridger Avenue, Suite 520
  100 North Carson Street        Las Vegas, Nevada 89101

8   Carson City, Nevada 89701      (702) 728-5300
  (775) 684-1131            *Attorneys for Plaintiffs*

9   *Attorneys for Defendants*

10                     PHILIP J. KOHN
                    Clark County Public Defender

11

12                     Date: <u>December 21, 2015</u>

13

14                     <u>*/s/ Christy Craig*</u>
                    Christy Craig, Chief Deputy

15                     Public Defender
                    309 South Third Street, Suite 226

16                     Las Vegas, Nevada 89155
                    (702) 455-4685

17                     *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28